## In re Estate of Theresa Dettenmaier, Deceased. Appeal of Harry Dettenmaier and Anna Peacock.

*Decedent's estate—Orphan's court—Adjudication — Parent and child— Wages—Contract.*

The law implies no promise on the part of a parent to pay for services rendered, or support or attendance given, by the child as such, even after the child has become of age, and in the absence of clear and distinct proof of an express contract, no allowance can be made or recovery had from a parent's estate on such a claim.

Where a decedent gave control of her deposit book in a savings bank to a daughter more than twenty-one years old and permitted her to draw moneys for the payment of expenses attendant on decedent's illness; requested her to withdraw the balance, for the reason that she desired the daughter to have it all before decedent's death; made declarations in the daughter's presence that she desired that her daughter should have her estate, and the deposits were not drawn out of the bank, the proof of an express contract is not sufficiently clear and distinct to sustain an adjudication by the orphans' court in favor of the daughter.

Argued Dec. 16, 1899. Appeal, No. 98, Oct. T., 1899, by Harry Dettenmaier and Anna Peacock, from decree of O. C. Phila. Co., Jan. T., 1899, No. 301, sustaining exceptions to the adjudication of the account of the administrator of the estate of Theresa Dettenmaier, deceased. Before Rice, P. J., Beaver, Orlady, W. W. Porter, W. D. Porter and Beeber, JJ. Reversed. Opinion by W. W. Porter, J.

Exceptions to adjudication. Before Ashman, J.

It appears from the record that Theresa Dettenmaier was the mother of Harry Dettenmaier, Anna Peacock and Mary Cahill; that she lived for some years prior to her death in the home of

Statement of Facts.

the last named, who was of age and who supported her mother, and, in the illness which culminated in the death of her mother nursed her, and in other ways rendered her attention. It was shown that on several occasions decedent had expressed a desire that when she was gone Mary Cahill should receive all her belongings, which consisted of a deposit in a savings bank. It was also shown that Mrs. Cahill had charge of the deposit book, and had drawn at her mother's instance, certain moneys which were essential for the expenses incurred by her illness.

At the adjudication before FERGUSON, J., Mary Cahill claimed $4.00 a week for sixty-eight weeks for board and nursing her mother. She also claimed the balance of the estate, $158.08, as a gift.

One witness testified to a conversation with the decedent, inter alia, as follows :

"Q. Do you remember just exactly what her mother (the decedent) said? A. She often came and saw me, and she all the time says, 'Her only help is Mary.' No one would look after her. Q. Did she promise to pay Mary for taking care of her? A. The last time I saw her, about a week before her death, I was there every night, and she says, 'she sent Mary for getting the money in bank;' she said, 'I want Mary shall take all out, and Mary would not do it, for Henry and Anna promised me they never will make Mary trouble.' That is what Mrs. Dettenmaier said the last time I saw her, 'Henry and Anna promised me, they never will make Mary trouble.'"

A brother-in-law of decedent testified also:

"I have known my sister-in-law for forty-eight years. When I came to visit her she told me often, she says, 'My daughter Mary Cahill, she treats me so nice.' She told me 'she never gave me a bad look in her life,' and she told me 'I couldn't never reward her for the good service she has done for me, many a night setting up all night when I would be very low.' She told me that 'my other two children—sometimes they don't come for two or three weeks to see me.' Q. Did she say that she had promised to pay her anything for taking care of her? A. She didn't tell me that. She said she couldn't reward her for what she done for her, and she could never reward her too much for what she had done for her. Q. Was Mrs. Cahill ever present when she said that? A. No, nobody there but myself."

Another witness, one Katherine Miller, testified as follows:
" Q. Did you ever hear her (the decedent) say anything about recompensing her daughter, Mary Cahill, for her care of her during her illness? A. She said to me at the time, 'she should be paid for what she does for me.' Q. How often was that said to you? A. A couple of times. Q. Was Mrs. Cahill present? A. No, she was by herself. Q. Both times? A. Some times she came in and out. Q. She was there some time, was she not? A. Yes, she said she should be paid for what she did."

The orphans' court allowed her claim, and distributed the balance of the estate to her.

Exceptions filed by Harry Dettenmaier and Anna Peacock to this award were dismissed by the court in an opinion by Ashman, J., reported in 8 Pa. Dis. Rep. 273. Harry Dettenmaier and Anna Peacock appealed.

*Error assigned* among others was dismissing the exceptions.

*Wm. H. R. Lukens*, for appellants.—A child is bound to render service and attention to her parent as a matter of filial duty, and cannot recover compensation therefor, without proof of an express contract for reimbursement, or of circumstances which necessarily imply such a contract: Candor's Appeal, 5 W. & S. 513; Murphy v. Corrigan, 161 Pa. 59.

An attempt to establish such a contract by inference is regarded with great disfavor, and in order to establish it the proof must be clear, distinct and satisfactory: Lynn v. Lynn, 29 Pa. 369; Weaver's Estate, 182 Pa. 349.

The terms of such a contract must appear, from the evidence, to have been definite and certain: Graham v. Graham, 34 Pa. 475.

Mere loose declarations of the decedent are not sufficient: Murphy v. Corrigan, 161 Pa. 59; Weaver's Estate, 182 Pa. 349.

The evidence was insufficient to establish the necessary contract. The utmost that it tended to prove was that the services were rendered in the expectation of a legacy, and this has always been held insufficient to create a contract: Thompson v. Stevens, 71 Pa. 161; Miller's Estate, 136 Pa. 239.

*Henry J. Scott*, with him *A. Hagen, Jr.*, for appellee.—It has been repeatedly held that the finding of an auditing judge has all the effect of a verdict of a jury and, where confirmed by the orphans' court in banc, it will not be disturbed except upon the clearest proof of error: Mayhew's Est., 155 Pa. 94; Coulston's Est., 161 Pa. 151; Strauss's Est., 168 Pa. 561.

The evidence in this case is quite as strong as that in Miller's Appeal, 100 Pa. 568.

OPINION BY WILLIAM W. PORTER, J., March 21, 1900:

The rule deducible from the Pennsylvania authorities is formulated thus, in 4 Pepper and Lewis's Digest of Decisions, 6283: " The law implies no promise on the part of a parent to pay for services rendered, or support or attendance given, by the child as such, even after the child has become of age, and in the absence of clear and distinct proof of an expressed contract, no allowance can be made or recovery had from a parent's estate on such a claim." This rule is applicable to the case at bar. The court below holds that there was sufficient proof of a prior and existing contract to pay for the services rendered by the claimant to her mother.

Where a question of fact has been passed upon by an adjudicating judge and by the court on exceptions, the appellate courts rarely disturb the conclusion reached. In this case, however, we are constrained to hold that the evidence presented was not adequate to prove the existence of a contract to pay. To reverse the order of the court below doubtless bears hardly upon the claimant. The conduct of the appellants has been not improperly characterized by the learned judge of the court below as evincing " undisguised selfishness." We cannot refuse, however, to give effect to a salutary rule of law because in a particular instance it results in apparent hardship.

The decree of the court below is based upon findings that the decedent gave the control of her deposit book in the savings bank to the appellant and permitted her to withdraw moneys for the payment of some of the expenses attendant upon the decedent's illness ; that the decedent requested her daughter to withdraw the balance, for the reason that she desired her daughter to have it all before her death ; that this was accompanied with the declarations by the decedent that her daughter should have what

might remain of the decedent's estate, and that some of the declarations were made in the presence of the claimant. The balance of the deposit was not withdrawn by the daughter. These are the grounds upon which the claimant relied in asserting a contract to pay. The testimony itself is, in part, given by witnesses not fully familiar with the English language. The substance of the testimony is, however, as stated above. Taken as strongly as it in fairness can be, it is not sufficiently clear and distinct proof of an express contract.

The decree of the court below is therefore reversed, and the record is remitted that distribution of the estate may be made in accordance with the views herein expressed.